IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JILL K. GRAZIANO,

               Plaintiff,

     v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

             Defendant.

Case No. 6:13-cv-00956-SI

**OPINION AND ORDER**

Robert A. Baron, HARDER, WILLS, BARON & MANNING, PC, 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Ronald K. Silver, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third, Suite 600, Portland, OR 97204; Kathy Reif, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Ms. Jill K. Graziano seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is AFFIRMED.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A.  Plaintiff's Applications

Ms. Graziano protectively filed an application for DIB on September 28, 2008, initially alleging disability beginning on January 1, 2008. AR 122-128. Later that same date, Ms. Graziano filed an amended DIB application alleging disability beginning April 1, 2004.

AR 129-130. Ms. Graziano also filed an application for SSI on February 23, 2009, alleging

disability beginning on January 1, 2008. AR 131-132. Ms. Graziano was born on January 28,

1963; she was 45 at the time of her applications.

The Commissioner denied Ms. Graziano's application initially and upon reconsideration;

thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). AR 77-78. An

administrative hearing was held on August 10, 2011. AR 9-35. On August 25, 2011, the ALJ

found Ms. Graziano not disabled. AR 40-60. The Appeals Council denied Ms. Graziano's

request for review, making the ALJ's decision the final decision of the Commissioner. AR 106.

Ms. Graziano now seeks judicial review of that decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

> 1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R.
> §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
> significant mental or physical duties done or intended to be done for pay
> or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
> such work, she is not disabled within the meaning of the Act. 20 C.F.R.
> §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
> substantial gainful activity, the analysis proceeds to step two.

2.     Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ began his opinion by noting that Ms. Graziano met the insured status requirements of the Social Security Act through December 21, 2013. AR 45. The ALJ then applied the sequential process. AR 45-55. At step one, the ALJ found Ms. Graziano engaged in substantial gainful activity from her alleged onset date through July 31, 2008. AR 45. The ALJ noted, however, that there had been a continuous 12-month period during which Ms. Graziano did not engage in substantial gainful activity. AR 46. The ALJ then applied the remainder of the sequential process for the period of August 1, 2008, through the date of the decision. AR 46.

At step two, the ALJ found that Ms. Graziano has the following severe impairments: diabetes mellitus with neuropathy, controlled; coronary artery disease status post myocardial infarction and stent placement; obesity; depression; and anxiety with a history of agoraphobia. AR 46. The ALJ found Ms. Graziano's medically determinable impairments of history of fibromyalgia and history of migraines not severe; the ALJ nevertheless considered the combination of non-severe and severe impairments in assessing Ms. Graziano's RFC. AR 46. At step three, the ALJ found that Ms. Graziano did not have an impairment or combination of

impairments that met or equaled one of the specific impairments listed in the regulations. AR 46-47.

The ALJ next assessed Ms. Graziano's RFC. The ALJ found that Ms. Graziano retained the capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with no exposure to hazards (e.g., heights or moving machinery), and the work must be unskilled with only occasional dealings with the public and co-workers. AR 48. At step four, the ALJ determined that considering Ms. Graziano's RFC, she could not perform any past relevant work. AR 54. Nevertheless, at step five the ALJ concluded that, based on the testimony of a Vocational Expert ("VE"), Ms. Graziano could perform jobs that existed in significant numbers in the national economy. *Id.* Thus, the ALJ ruled that Ms. Graziano is not disabled. AR 55.

## DISCUSSION

Ms. Graziano argues the ALJ erred by: (A) failing to give clear and convincing reasons for rejecting Ms. Graziano's testimony as not fully credible; (B) failing to acknowledge and address the lay evidence; (C) determining that Ms. Graziano's fibromyalgia is not a severe impairment; (D) finding that Ms. Graziano's anxiety with a history of agoraphobia is a severe impairment, but then failing to consider the primary symptom of her agoraphobia, i.e., her inability to leave the house without the assistance of medication and her husband's presence; (E) finding that the opinion of Ms. Graziano's treating counselor was entitled to very little weight, which was compounded because the ALJ did not consider the counselor's Mental Residual Function Report, which was submitted to the Appeals Council after the hearing; and (F) finding that Ms. Graziano retains the residual functional capacity to perform work as a sorter, packer, and bench assembler in the national economy.

**A.  Ms. Graziano's Credibility**

Ms. Graziano argues the ALJ erred by failing to give clear and convincing reasons for

discrediting Ms. Graziano's symptom testimony and testimony regarding her limitations.  There

is a two-step process for evaluating the credibility of a claimant's own testimony about the

severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591

(9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective

medical evidence of an underlying impairment which could reasonably be expected to produce

the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

(citation and quotation marks omitted). When doing so, the claimant "need not show that [her]

impairment could reasonably be expected to cause the severity of the symptom she has alleged;

she need only show it could reasonably have caused some degree of the symptom." *Smolen v.

Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets the first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing the court to conclude that the ALJ did not

arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir.

1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and the observations of physicians and

third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at

PAGE 7 – OPINION AND ORDER

1284. The Commissioner recommends assessing the claimant's daily activities; the location,

duration, frequency, and intensity of the individual's pain or other symptoms; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other

than medication, the individual receives or has received for relief of pain or other symptoms; and

any measures other than treatment the individual uses or has used to relieve pain or other

symptoms. *See* Social Security Ruling ("SSR") 96-7p, *available at* 1996 WL 374186 (July 2,

1996). The ALJ may not, however, make a negative credibility finding "solely because" the

claimant's symptom testimony "is not substantiated affirmatively by objective medical

evidence." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Further, an ALJ also "may consider . . . ordinary techniques of credibility evaluation,

such as the reputation for lying, prior inconsistent statements concerning the symptoms, . . . other

testimony by the claimant that appears less than candid [and] unexplained or inadequately

explained failure to seek treatment or to follow prescribed course of treatment[.]" *Smolen*, 80

F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's

reasons for rejecting the claimant's testimony are upheld. *Batson v. Comm'r Soc. Sec.

Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

The ALJ provided a lengthy and detailed explanation for his finding that Ms. Graziano's

allegations of disability due to her impairments were less than fully credible. In support of his

credibility finding, the ALJ offered several specific reasons.

First, the ALJ noted that Ms. Graziano's daily activities are not limited to the extent one

would expect. Significantly, from the time Ms. Graziano claimed to be disabled, April 1, 2004,

until her mother's death in July of 2008, Ms. Graziano provided 24-hour home care to her
mother, which involved heavy lifting, cooking, cleaning, shopping, and driving. AR 50.

Additionally, the ALJ noted Ms. Graziano stated in her Function Report that she is able
to care for her personal needs independently and is also able to care for a dog. AR 50. Moreover,
although Ms. Graziano claimed in her Function Report that she was able to walk for only five
minutes at a time, medical records indicated that she was walking three times a week for
approximately two miles. AR 50. Ms. Graziano was also able to cook and perform light
housework, to engage in hobbies of reading and watching television, attend church twice a
month, ride in a car, and handle her finances independently. AR 50.

The ALJ also noted the lack of evidence that Ms. Graziano tried to find a job at a lower
exertional level after her last job ended. AR 50. Instead, Ms. Graziano began receiving
unemployment benefits, which required her to certify that she was ready, willing, and able to
work, which is inconsistent with her allegations she is unable to work due to disability. AR 50.

The ALJ also noted Ms. Graziano continued to smoke cigarettes post myocardial
infarction despite being repeatedly counseled on smoking cessation, and found her failure to quit
smoking against medical advice reduced her credibility. AR 50-51. The ALJ discounted Ms.
Graziano's allegations of shortness of breath given her continued smoking. AR 51. Moreover,
Ms. Graziano testified she was unable to afford all her necessary medications, yet continued to
purchase cigarettes, which the ALJ found suggestive that her symptoms may not have been as
limiting as she alleged. AR 51.

Finally, the ALJ found the description of the symptoms and limitations Ms. Graziano
provided throughout the record was generally inconsistent and unpersuasive. AR 51. By way of
example, the ALJ noted that Ms. Graziano claimed at the hearing that she suffered "debilitating"

migraines, yet there was no mention of migraines or headaches in the medical records from

July 31, 2008, until April 2011, when she complained once of a migraine. AR 51.

Ms. Graziano disagrees with this finding, arguing she did not have sufficient medical

insurance. Nonetheless, Ms. Graziano did see medical providers during that time-period, and did

not mention her allegedly debilitation migraines. Her failure to report migraine symptoms to

treatment providers was a legitimate consideration in the ALJ's determination of her credibility.

Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

In sum, the ALJ provided specific, clear, and convincing reasons for discounting Ms.

Graziano's credibility.

**B. The Lay Evidence**

Ms. Graziano also argues the ALJ failed to acknowledge and discuss the lay testimony of

her husband, Kenneth Short, and her friend, Suzette Bender. The ALJ has a duty to consider lay

witness testimony. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th

Cir. 2012). The ALJ must provide "germane reasons" when rejecting lay testimony. *Molina*, 674

F.3d at 1114. The ALJ, however, is not required to address each witness "on an individualized

witness-by-witness basis" and may reject lay testimony predicated upon reports of a claimant

properly found not credible. *Id.* Moreover, an ALJ's failure to discuss law witness testimony is

harmless "where law witness testimony does not describe any limitations not already described

by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony

apply equally well to the lay witness testimony." *Id.* at 1117.

Kenneth Short's third-party function report stated Ms. Graziano was limited in lifting,

squatting, bending, standing, reaching, sitting, kneeling, and stair climbing. AR 250. He also

wrote that Ms. Graziano could walk no more than 50 yards before needing to rest, that she lost

her balance, that sometimes her leg did not work, and that she lost her breath easily. AR 250. He

also observed that Ms. Graziano had difficulty sleeping due to pain, that she is afraid to be alone and needs someone to accompany her when she goes outside the home, and that she uses a wheelchair when she and he anticipate a need to walk a lot. AR 246, 249, 251.

Mr. Short's function report did not provide evidence of specific limitations unaddressed by the ALJ. With respect to most of the limitations addressed by Mr. Short, the ALJ accommodated those limitations with the restriction to light work without any exposure to workplace hazards. To the extent Mr. Short reported limitations not accommodated by the restriction to a reduced range of light work, the ALJ considered and rejected those limitations.

Suzette Bender's function report indicated Ms. Graziano visited her home, where they "just visit." AR 223. Otherwise, Ms. Bender speaks on the phone with Ms. Graziano every day. AR 223. As such, it appears Ms. Bender's knowledge of Ms. Graziano's limitations reflects Ms. Graziano's statements about her abilities rather than Ms. Bender's personal observations. Moreover, to the extent Ms. Bender's function report reflects her independent observations, again it did not provide evidence of specific limitations unaddressed by the ALJ. The ALJ did not err in his consideration of the lay witness testimony.

## C.  Ms. Graziano's Fibromyalgia

Ms. Graziano contests the ALJ's finding that her fibromyalgia was not a severe impairment. The ALJ considered Ms. Graziano's fibromyalgia non-severe, but did "consider[] the combination of non-severe and severe impairments in assessing the claimant's residual functional capacity." AR 46.

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert*, 482 U.S. at 153-54. The claimant bears the burden of establishing that she has a severe impairment at step two by providing medical evidence. 20 C.F.R. § 404.1512. An impairment or combination of impairments is "not severe only if the evidence establishes a slight abnormality

that has no more than a minimal effect on an individual's ability to work." *Webb v. Barnhart*,

433 F.3d 683, 686 (9th Cir. 2005) (emphasis in original) (quoting Smolen, 80 F.3d at 1290)

(quotation marks omitted). The ALJ is required to consider the combined effect of all of the

claimant's impairments on his or her ability to function. *Howard ex rel. Wolff v. Barnhart*, 341

F.3d 1006, 1012 (9th Cir. 2003). If the ALJ determines that a claimant is severely impaired at

step two, the ALJ continues with the sequential analysis, considering all of the claimant's

limitations, whether or not they are severe. SSR 96-9p, *available at* 1996 WL 374184 (July 2,

1996). Step two is "merely a threshold determination of whether the claimant is able to perform

his past work." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). If an ALJ fails to

consider limitations imposed by an impairment at step two but considers them at a later step in

the sequential analysis, any error at step two is harmless. *See Lewis v. Astrue*, 498 F.3d 909, 911

(9th Cir. 2007); *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

    Ms. Graziano argues that the ALJ's reasoning reflects an absence of understanding of the

medical condition of fibromyalgia, and contends that the limiting nature of the complaint is

apparent. Social Security Ruling 12–2p: Evaluation of Fibromyalgia, provides guidance on how

to determine whether the evidence establishes a medically determinable impairment of

fibromyalgia, *available at* 2012 WL 3104869 (July 25, 2012).[1] Under SSR 12–2p, after

fibromyalgia is accepted as a medically-determinable impairment, no specific limitations are

mandated. Instead, the ALJ must evaluate the credibility of the claimant's statements and the

---

[1] Although the ALJ was not bound by SSR 12-2p because it went into effect after he rendered his opinion, s*ee Paulson v. Bowen*, 836 F.2d 1249, 1252 n. 2 (9th Cir. 1988), SSR 12–2p is instructive for the Court's analysis because it pre-dated the Appeals Council's April 5, 2013, decision. *Thuy Trang Thi Nguyen v. Colvin*, 2014 WL 127071 at *8, n.1 (D. Or. Jan. 13, 2014) (citing *Clowers v. Colvin*, 2013 WL 5835769, at *5 n. 2 (W.D. Wash. Oct. 30, 2013)).

medical records to determine the intensity, persistence, and limiting effects of symptoms from fibromyalgia.

Here, the ALJ noted Ms. Graziano had been diagnosed with fibromyalgia, but he further noted that Ms. Graziano did not receive any significant treatment for her fibromyalgia and no functional limitations were ever described as arising from her fibromyalgia. He concluded that Ms. Graziano's fibromyalgia was not a severe impairment because there was no evidence that it caused more than a slight limitation on Ms. Graziano's ability to perform basic work-related tasks. This conclusion was supported by substantial evidence in the record. Additionally, Ms. Graziano identifies no specific evidence of limitations attributable to her fibromyalgia that are not accommodated by the restriction to a reduced range of light work with only occasional dealings with the public or coworkers.

Further, even if it was error for the ALJ not to find Ms. Graziano's fibromyalgia a severe impairment at step two, any such error was harmless. The ALJ considered the impact of all of Ms. Graziano's alleged conditions, both severe and non-severe, in evaluating Ms. Graziano's RFC. This consideration renders any error at step two harmless. *Lewis*, 498 F.3d at 911; Burch, 400 F.3d at 682.

**D.  Ms. Graziano's Anxiety and Agoraphobia**

Ms. Graziano argues the ALJ erred when he implicitly treated her anxiety with a history of agoraphobia as imposing no more than a slight limitation on her ability to perform basic work-related activities. She contends her agoraphobia is itself disabling as she is unable to leave her house without the assistance of medication and her husband's supportive presence.

As noted, at step two the ALJ found Ms. Graziano's anxiety with history of agoraphobia to be a severe impairment. After so finding, the ALJ analyzed Ms. Graziano's mental condition and found it did not meet or medically equal the severity of one of the listed impairments. The

PAGE 13 – OPINION AND ORDER

ALJ found Ms. Graziano has mild restriction in activities of daily living, and moderate difficulties with social functioning. Although Ms. Graziano testified that her agoraphobia makes her feel like she cannot leave the house, the ALJ found evidence in the record that she was able to attend church, spend time talking on the phone, and reported no problems getting along with family, friends, neighbors, or authority figures. With regard to concentration, persistence, or pace, the ALJ found Ms. Graziano has moderate difficulties.

In determining Ms. Graziano's RFC, the ALJ accounted for Ms. Graziano's anxiety and agoraphobia with the following work-related limitations: "Given the claimant's depression and anxiety with agoraphobia, a limitation to unskilled work with only occasional dealings with the public and co-workers is appropriate." AR 53. This finding was supported by substantial evidence in the record.

**E.  Treating Counselor Alan Jenkins, M.Ed.**

Ms. Graziano further argues the ALJ erred in finding the opinion of her treating counselor, Alan Jenkins, M.Ed., entitled to very little weight. She argues the ALJ should not have concluded Mr. Jenkins represented an "other medical source" rather than an "acceptable medical source," because his cognitive therapy plan and treatment of Ms. Graziano was supervised and approved by Dr. Isaacson.

Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, and licensed podiatrists. 20 C.F.R. § 404.1513(a). Nurse practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists are considered other medical sources. 20 C.F.R. § 404.1513(d)(1). The ALJ may discount testimony from other medical sources by giving reasons germane to each witness. *Molina*, 674 F.3d at 1111.

An opinion from someone other than an acceptable medical source may be "considered that of an 'acceptable medical source'" where that other source "was working closely with, under

PAGE 14 – OPINION AND ORDER

the supervision of" an acceptable medical source. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1234 (9th Cir. 2011) (citing *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996)). In the absence of additional evidence, however, a simple signature by a supervising doctor at the bottom of an assessment form is not sufficient to establish that the acceptable medical source worked closely with and supervised the other medical source. *See Catt v. Colvin*, 2014 WL 98720, at *9 (D. Or. Jan. 8, 2014); *Cruise v. Astrue*, 2012 WL 5037257, at *5-6 (D. Or. Sept. 28, 2012), *adopted by* 2012 WL 4966462 (D. Or. Oct. 17, 2012). Here, the sole evidence of Dr. Isaacson's involvement in Ms. Graziano's treatment is his signature on the second assessment completed by Mr. Jenkins. In the absence of any other evidence, the ALJ properly considered Mr. Jenkins as an "other medical source."

The ALJ gave germane reasons for giving Mr. Jenkins' opinion little weight. The ALJ noted that Ms. Graziano did not allege disability based on anxiety or panic symptoms until after her application was denied at reconsideration. The ALJ also noted Mr. Jenkins' report was based largely on Ms. Graziano's subjective complaints, which the ALJ previously found unreliable, and that when Mr. Jenkins first assessed Ms. Graziano's conditions he mistakenly believed she was already receiving disability benefits for agoraphobia, a factor that may have influenced his evaluation. Finally, the ALJ noted Mr. Jenkins' opinion was without substantial support from the other evidence of record, rendering it less persuasive. AR 53. Accordingly, this Court cannot conclude the ALJ erred in affording Mr. Jenkins' opinion little weight.

**F.  Ms. Graziano's RFC**

In the introduction to her Brief in Support, Ms. Graziano alleges the ALJ erred "in finding that [she] retains the residual functional capacity to perform work as a sorter, packer[,] and bench assembler in the national economy." Plaintiff does not, however, separately address this allegation in her Brief or in her Reply. To the extent this allegation is construed as an

argument that the RFC determination was in error based upon the claims argued by the parties and addressed above, the Court finds the allegation lacks merit.

## CONCLUSION

The Commissioner's decision that Ms. Graziano is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 22nd day of September, 2014.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge